UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 10-cv-02237-WYD

GARY A. KEMPER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

I.     <u>INTRODUCTION</u>

THIS MATTER is before the Court on a request for review of a final administrative decision of the Commissioner of Social Security on a claim for Supplemental Security Income ["SSI"] benefits. For the reasons stated below, this case is reversed and remanded for further factfinding.

II.     <u>BACKGROUND</u>

Plaintiff initially brought a pro se action in 2007 requesting review of the Commissioner's decision that denied Plaintiff's application for SSI benefits under Title XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 1381-83c. That action was entitled *Kemper v. Astrue*, Civil Action No. 07-cv-02339-WYD [hereinafter "*Kemper I*"]). On March 2, 2009, I issued an Order reversing and remanding the Case to the Commissioner for further fact finding. (*Kemper I*, ECF No 33.) A Judgment was issued on March 3, 2012. (*Id.*, ECF No. 34.)

As noted in my March 2009 Order, Plaintiff was 46 years old on the date of the ALJ's initial decision.  (*Kemper I*, ECF No. 33 at 1.)  He has an eleventh grade education, and previously worked as a telephone answering service operator, welder, and structural steel worker.  (*Id.*)  Plaintiff's application claimed that he became disabled on January 10, 1994, due to neck and back problems.  (*Id.*)

In a decision dated July 19, 2007, ALJ James W. Olsen concluded that Plaintiff was not disabled within the meaning of the Act.  (Transcript ["Tr. ] 9-20.)  This was based on his finding at step two of the sequential evaluation that the objective medical evidence failed to establish the existence of a medically determinable impairment that could be expected to produce Plaintiff's symptoms.  (*Id.* 18-20.)

In my Order of March 2, 2009, reversing the ALJ's decision, I found that the ALJ erred at step two in connection with his assessment of Plaintiff's impairments.  (*Kemper I*, ECF No. 33 at 6-14.)  I found problematic the ALJ's rejection of the opinion of the agency's own consulting physician, Dr. Jack, which I found was not inconsistent with the findings of the treating physicians.  (*Id.* at 6)  I noted that Dr. Jack documented mechanical low back pain, and that he found evidence of "significant lumbar scoliosis" and "neck pain, mechanical."  (*Id.* at 7.) I found that these are specific medical findings that could not be ignored by the ALJ.  (*Id.*)  Subsequent x-ray results showed "loss of normal cervical curve, most likely. . . secondary to muscle spasm, minimal disc space narrowing of C3-4. . ." and "minimal disc space narrowing . . . at L5-S1. . . ."  (*Id.* at 9.)

I found in that Order that the ALJ failed to properly weigh these opinions and the specific medical findings, selectively applied Dr. Jack's findings to support his decision, and that the ALJ improperly substituted his judgment for that of the doctor's in finding

that there were no severe impairments.  (*Kemper I*, ECF No. 33 at 7-9.)   I also found that the evidence of significant lumbar scoliosis diagnosed by Dr. Jack, standing alone, could be enough to meet the de minimus showing of impairment required to move on to further steps in the sequential evaluation.  (*Id*. 8-9.) I stated that this evidence, when combined with Dr. Jack's findings about Plaintiff's work restrictions, certainly could be sufficient to show that the impairment has more than a minimal effect on Plaintiff's ability to work.  (*Id*.)  This was particularly true when the pain that doctors had noted was also considered.  (*Id*.)  Accordingly, I reversed the ALJ's decision for further factfacting and a rehearing.  (*Id.* at 14.)

Upon remand, the ALJ's decision was vacated by the Appeals Council.  (Tr. 190-92.)  The Appeals Council remanded the case to the ALJ for further proceedings. (*Id*.)

At the new hearing in April 2010 (Tr. 209-25), Plaintiff testified that he was unable to work due to a spinal cord injury with fractures.  (*Id*. 212.)  His condition caused pain, leg swelling, and problems with his thinking, eyesight, and shoulder and arm movements.  (*Id*.)  Plaintiff also testified that he suffered from thoracic cord compression due to chondroma of the rib, which he discovered on his own.  (*Id*. 212, 220.)[1]  He stated that the condition is unknown in the United States, but is discussed in a scientific article from Japan.  (*Id*. 214, 220-21.)  Plaintiff submitted the article to the agency's hearing office in March 2007.  (*Id*. 102-04.)  He also requested that the ALJ subpoena the doctors from Japan who wrote the scientific article to testify regarding his condition.

---

[1] A chondroma is a slow-growing, painless cartilaginous tumor.  It may occur wherever there is cartilage." Taber's Cyclopedic Medical Dictionary (21st ed. 2009).

(*Id.* 212-14.)  The ALJ denied Plaintiff's request because he made no showing that the testimony was necessary to decide the case.  (*Id.* 214.)

Plaintiff also testified at the hearing that he took no medications for his condition, and had received no other treatment, except for one visit to a chiropractor.  (Tr. 216-17.)  He stated as to his functional abilities that he could sit for 15 minutes at a time, stand for ½ hour at a time, walk for 30-45 minutes at a time, and lift no more than 15 pounds.  (*Id.* 217-19.)

The same ALJ who issued the July 19, 2007 decision that was reversed by me, James W. Olsen, issued another unfavorable decision on May 28, 2010.  (Tr. 168-76.)  He found at step two, as in his previous decision, that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.  (*Id.* 174.)  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act since August 23, 2005, the date the application was filed.  (*Id.* 176).

The Appeals Council considered Plaintiff's exceptions (Tr. 150-67), but declined to assume jurisdiction.  (*Id.* 147-49.)  This appeal followed.

III.    Motions and Filings by Plaintiff

On July 29, 2011, Plaintiff filed a motion asking to cite supplemental authority.  (ECF No. 26).  That motion was granted by Minute Order of October 18, 2011.  (ECF No. 27.)

On January 6, 2012, Plaintiff filed a motion for the court to review the enclosed documents "and enter an order as properly so by Section 2.5 of the Judiciary Act of 1789." (ECF No. 34.)  The documents attached to the motion consist of medical and

-4-

other records related to Plaintiff's alleged impairments.  Plaintiff does not state how the documents are relevant to or impact the ALJ's decision, and does not argue that the documents require reversal of the ALJ's decision or a remand of the case.

The Commissioner filed a response on January 20, 2012, arguing that the Court treat Plaintiff's filing as a motion to remand under sentence six of 42 U.S.C. § 405(g).  He also argued that the Court should then deny the motion because the evidence submitted by Plaintiff would not have changed the ALJ's decision had he had the evidence before him.  Plaintiff filed a reply on January 27, 2012, stating that the issue is whether the Commissioner complied with the Court's March 2009 Order.

I will grant Plaintiff's January 6, 2012 motion to the extent that it asks the Court to review the attached documents.  I have considered the evidence in connection with my review of the ALJ's decision.  I have also reviewed the evidence submitted on April 19, 2012 on a CD (ECF No. 39) and on May 23, 2012 (ECF No. 40).  Plaintiff's January 6, 2012, motion is otherwise denied, including to the extent the motion may be construed to seek a remand to the Commissioner.  Plaintiff has not shown how the evidence is material or that there is good cause for the failure to incorporate such evidence into the prior proceeding.  Indeed, most of the evidence predates the ALJ's decision and could have been introduced by Plaintiff at that hearing.

IV.   ANALYSIS OF PLAINTIFF'S APPEAL

   A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

   B. <u>Whether the ALJ's Decision Should Be Reversed</u>

Turning to Plaintiff's appeal, the issues before the Court are whether substantial evidence of record supports the decision of the ALJ on remand that Plaintiff was not disabled within the meaning of the Social Security Act, and whether the ALJ applied the correct legal standards in making this determination.  In this case, the issue is whether the ALJ's finding at step two that there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment is supported by substantial evidence.  I note that while the ALJ made this same finding in his earlier 2007 decision based solely on the record, which I found was error, the ALJ appeared to based his current decision on the written findings of a medical expert that he hired to review the record.

Turning to my analysis, at step two of the sequential evaluation, the ALJ must determine whether the claimant has a medically determinable severe impairment or

impairments." *Parise v. Astrue*, No. 10-3062, 2010 WL 4846097, at *1 (Nov. 30, 2010)[2] (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)).  Indeed, the term "disability" is defined in the Social Security Act to mean the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1527(a)(2).  In the absence of such an impairment, "an individual must be found not disabled at step 2. . . ." SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996).

A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically accepted clinical and laboratory diagnostic techniques."  20 C.F.R. § 423(d)(3).  "[A] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  20 C.F.R. § 404.1509; *see also* SSR 96-4p, 1996 WL 374187, at *1.  "Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms)."  20 C.F.R. § 404.1528(b).  "Signs must be shown by medically acceptable clinical diagnostic techniques." *Id*.  "Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques", and include chemical tests, electrophysiological studies

---

[2]   I have cited this and other unpublished opinions in this Order because the cases have persuasive value with respect to material issues that have not been addressed in a published opinion and/or they will assist me in the disposition of this case.  10th Cir. R. 36.3(B).

(electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests." 20 C.F.R. § 404.1528(c).

A plaintiff must provide objective evidence in the form of signs or laboratory findings as defined above "'sufficient to suggest a reasonable possibility that a severe impairment exists.'" *Bryant v. Barnhart*, No. 01-5137, 2002 WL 1272243, at * (10th Cir. June 10, 2001) (quoting *Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997)). In other words, "'the starting place [is] the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.* (quoting *id.*) This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004).

If there is medical evidence consisting of such objective evidence, *i.e.* signs, symptoms, and laboratory findings establishing an impairment, the issue then becomes whether the claimant has made "a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities, i.e., 'the abilities and aptitudes necessary to do most jobs.'" *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine setting. 20 C.F.R. § 404.1521(b).

According to the Tenth Circuit, "[w]hile 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. 2004) (quoting *Langley*, 373 F.3d at 1123). "In order to make this showing, it must be demonstrated that a particular impairment has "more than a minimal effect" on a claimant's ability to work. *Williams*, 844 F.2d at 751. The Supreme Court has noted that step two is designed "to weed out an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("step two 'is an administrative conscience [used] to screen out claims that are 'totally groundless' solely from a medical standpoint") (quotation omitted).

"If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity." *Grubbs v. Astrue*, No. 11-1125-SAC, 2012 WL 887601, at *2 (D. Kan. March 14, 2012). "Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work." *Hinkle,* 132 F.3d at 1352.

In the case at hand, the ALJ noted that the expert he retained, Dr. William F. Clayton, opined that "there are no objective findings of more than the degenerative MRI findings appropriate for claimant's age." (Tr. 175). He also noted that Dr .Clayton

pointed to signs of symptom magnification in the record. (*Id.*) While Dr. Clayton was provided with and completed a medical source statement (physical) in which he found limitations in Plaintiff's abilities to work, Dr. Clayton "prefaced his opinions with the statement 'I presume you wish the [form] answered based on the non-existent objective data.'" (*Id.*) (quoting Ex. 5F.) The ALJ then stated:

> The undersigned finds Dr. Clayton is an orthopedic specialist who has a thorough amount of understanding of the disability program and the evidentiary requirements and is familiar with the other information in a claimant's case record, and he has considered all of the pertinent evidence in this claim, including opinions of treating and other examining sources, and therefore the undersigned accords Dr. Clayton's opinions with substantial weight.
>
> Accordingly, the undersigned, in not substituting his own medical judgment for that of medical professionals, concludes that there are no objective medical signs or laboratory findings to substantiate the existence of a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms.

(*Id.*)

Turning to my analysis, I must not reweigh the evidence or substitute my judgment for that of the Commissioner. *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir.2005). However, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. *See Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir.1994) (the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). An ALJ's reliance on an agency medical consultant's opinion is reasonable only insofar as that opinion is supported by evidence in the case record. *Lee,* 2004 WL 2810224, at *3 (citing SSR 96-6P, 1996 WL 374180, at *2). In other words, the agency consultant's opinion must itself "find adequate support in the medical evidence." *Id.*

In this case, despite the opinion of Dr. Clayton to the contrary, there was objective evidence in the record of a back impairment in the form of signs and laboratory findings. The MRI of the cervical spine found "a slight loss of normal cervical curve, most likely due to muscle spasm. Very minimal disc space narrowing is noted at C-3-4." (Tr. 112.) The MRI of the lumbar spine found "[m]inimal disc space narrowing a L5-S1." (*Id.*) A neurosurgical examination by Dr. Turner in April of 2000 noted that the "cervical MRI scan shows some "borderline disc space height loss at C4-5, and C5-6. . . ." (*Id.* 115.) Dr. Turner also noted in the thoracic region that Plaintiff "has some mild bulging of the disc at T8-9" and some chronic wedged deformities consistent with compression fractures" that were not particularly changed from studies conducted a number of years ago. (*Id.*) While, as the ALJ noted, many of these findings were characterized as "minimal" or "mild", and Dr. Turner opined there was nothing surgically that he could do for Plaintiff (*id.* 174-175), Dr. Turner did not discount the fact that Plaintiff had a back impairment; indeed, he stated that he would see Plaintiff back as needed. (*Id.* at 115) He only found that there was not a neurological solution to Plaintiff's problems. (*Id.*)

The most recent examination of Plaintiff was by Dr. Jack in 2005. He diagnosed mechanical low back pain and neck pain based on suspected degenerative joint disease. (Tr. 111.) While the ALJ appeared to believe that the degenerative joint disease discussed by Dr. Jack was ruled out by the MRI (*see id.* at 175 – noting that Dr. Jack suspected degenerative joint disease, but discussing subsequent diagnostics that showed only minimal disc narrowing), this is a medical judgment that the ALJ was not

entitled to make. *See Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996). Also, the ALJ's medical consultant Dr. Clayton did not actually opine on this issue.

In any event, Dr. Jack also found evidence of lumbar scoliosis as well as limited range of motion in Plaintiff's cervical and lumbar region. (Tr. 110-111.) He further found that straight leg raising "caused significant pain in the mid to low back, left greater than right." (*Id.* 110). These were medical findings that neither the ALJ nor the medical expert who did not examine Plaintiff were entitled to discount. *Lee v. Barnhart*, 2004 WL 2810224, at *3.

I find that the above medical findings are sufficient to satisfy Plaintiff's threshold burden of presenting objective evidence of an impairment. Dr. Clayton's opinion to the contrary is not controlling. Not only did he discount the objective medical findings made by Dr. Jack and other physicians, he did so on an impermissible basis at step two; namely, Plaintiff's age. (*See* Tr. 200 – "[t]here are no objective findings of more than the degenerative MRI findings appropriate for claimant's age.")

I also find that the record demonstrates that the back impairment has "more than a minimal effect" on Plaintiff's ability to work. *Williams*, 844 F.2d at 751. Indeed, this is established by Dr. Clayton's report. Dr. Clayton opined that a person with chronic back pain such as Plaintiff needed a 15 minute sit/stand option with the ability to change positions as needed, could only occasionally reach with his hands, and had other work limitations. (Tr. 201-205.) Oddly, the ALJ appeared to discount these opinions stating, "[a]s pointed out by the District Court, the claimant's reported activities of daily living is evidence 'not relevant in any manner in connection with a step-two analysis, which analyzes the objective medical evidence in the case to determine whether an

-12-

impairment exists." (*Id.* 175.)  This was improper, as the medical source statement completed by Dr. Clayton did not address activities of daily living, but Plaintiff's ability to work.  This opinion was obviously extremely important to the step two analysis, and the ALJ's decision to discount it is highly suspect.

Based on the foregoing, I find that the record demonstrates that Plaintiff meets the requirements of step two.  He has a medically determinable severe impairment or impairments that is demonstrated in the record through medically accepted clinical and laboratory diagnostic techniques.  There is also evidence in the record that this impairment significantly limits Plaintiff's ability to do basic work activities.  Accordingly, I find that the ALJ's decision to the contrary is not supported by substantial evidence and must be reversed and remanded for further fact finding.

Upon remand, the Commissioner is instructed to remand the case to a new ALJ as I am not convinced that the ALJ who issued the decision at issue can be neutral and unbiased.  The new ALJ is instructed to find that Plaintiff has met his burden at steps one and two and proceed to analyze the subsequent steps in the sequential evaluation.

V.      CONCLUSION

In conclusion, for the reasons discussed in this Order, it is

ORDERED that Plaintiff's motion filed January 6, 2012 (ECF No. 34) is **GRANTED IN PART AND DENIED IN PART**.  It is granted only to the extent it requests that the Court review the enclosed documents and denied otherwise.  It is

FURTHER ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further factfinding pursuant to sentence four of 42 U.S.C. § 405(g). A

new ALJ is to be appointed, and that ALJ is instructed to find that Plaintiff has met his burden at steps one and two and to proceed to subsequent steps in the sequential evaluation.

Dated June 14, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge